# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARIO WILLIAMS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. CIV 14-157-RAW-SPS ) |
| CORRECTIONS CORPORATION OF AMERICA, et al., | ) ) ) |
| Defendants. | ) ) |

## OPINION AND ORDER

This action is before the Court on Defendants' motion for summary judgment. The Court has before it for consideration Plaintiff's complaint (Dkt. 1), Defendants' motion (Dkt. 33), a special report prepared by officials of Davis Correctional Facility (DCF) at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (Dkt. 23), and Plaintiff's responses to the special report and motion (Dkts. 26, 34).

Plaintiff, an inmate in the custody of the Oklahoma Department of Corrections who is incarcerated at Lexington Correctional Center in Lexington, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at DCF, a private prison in Holdenville, Oklahoma. The defendants are Corrections Corporation of America (CCA); Tim Wilkinson, DCF Warden; DCF Nurse Stewart; and Ray Larimer, DCF Clinical Supervisor.

**Standard of Review**

Defendants have moved the Court for dismissal of this action or in the alternative for summary judgment. Having moved for summary judgment in their favor, the movants are required to show the absence of a genuine issue of material fact and that the movants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Summary judgment is not appropriate if there exists a genuine material factual issue such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51 (1986). Plaintiff, as "the nonmoving party may not rest on [his] pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which [he] carries the burden of proof." *Applied Genetics Int'l. v. First Affiliated Sec., Inc.*, 912 F.2d 1238 (10th Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In this regard, all evidence of the nonmoving party is deemed true, and all reasonable inferences are drawn in favor of the nonmoving party. *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 114, 158-59 (1970)). "To defeat a motion for summary judgment, evidence . . . must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). This Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. With these standards in mind, the Court turns to the merits of the defendants' motion.

**Plaintiff's Allegations**

Plaintiff alleges the defendants were deliberately indifferent to his serious medical

2

needs. He claims that on April 18, 2013, he requested medical attention for his two broken fingers and his severely sprained wrist. Defendant Nurse Stewart initially misdiagnosed the injures and "snatched" one of his broken fingers, believing the finger was merely dislocated. On April 23, 2013, Plaintiff's hand was X-rayed, but he never saw a doctor at DCF. He was transferred to another facility for medical treatment on May 14, 2013, but he claims his hands have healed in their broken positions with loss of range, constant pain, loss of grip, and some deformity. He sets forth six grounds for relief:[1]

> **Count 1:** The failure of defendant's [sic] Wilkinson and Larimer to take disciplinary or other action to curb the known pattern of improper medical treatment by defendant Steward constituted deliberate indifference to Plaintiff's and other prisoners' safety, and contributed to and proximately caused the above-described violation of 8th Amendment rights and denied medical care.
>
> **Count 2:** The failure of defendant's [sic] CCA and Wilkinson to train, supervise, and discipline prison staff regarding all aspects of prison operations including but not limited to appropriate serious medical needs, such as, examination and treatment for broken hands and severely injured wrist constituted an [sic] violation to the 8th Amendment to the U.S. Constitution.
>
> **Count 3:** The actions of defendant Steward in misdiagnosing my broken fingers as a dislocation and snatching it, demonstrated her incompetency to properly treat the Plaintiff or other prisoners, constituted an 8th Amendment violation to the U.S. Constitution.
>
> **Count 4:** The failure of defendants Wilkinson and Larimer to provide medical care, such as examination and treatment, along with physical therapy for his broken hands and injured wrist, constitute deliberate indifference to the Plaintiff's serious medical needs in violation of the 8th Amendment to the U.S. Constitution.
>
> **Count 5:** The failure of defendants Wilkinson and Larimer to provide examination, treatment and physical therapy of the Plaintiff's broken hands and injured wrist constitutes the tort of negligence under the law of Oklahoma.

---

[1] To the extent Plaintiff may be attempting to assert the rights of other inmates, "a section 1983 claim must be based upon the violation of a plaintiff's personal rights, and not the rights of someone else." *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (citation omitted). A plaintiff "generally must assert his own legal rights and interests" rather than those of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

3

> **Count 6:** The aforemention [sic] acts and/or omissions of the individual defendants in being deliberately indifferent to the safety and health of Plaintiff, violating Plaintiff's civil rights, where the direct and proximate result of custems [sic], policies, and/or practices of CCA, by and through thier [sic] employees and/or agents. At all times relevant, defendants Wilkinson, Larimer and Steward were acting as CCA's employee and/or agents in furtherance of CCA's business of housing inmates for DOC. The aforemention [sic] defendants were CCA's decision makers, charged with the responsibility for making and implementing decisions on behalf of CCA, including medical care.

(Dkt. 1 at 9-10).

**Eighth Amendment Medical Claim (Counts 1-4 and 6).**

Defendants allege they did not violate Plaintiff's Eighth Amendment rights with regard to medical care. The special report indicates that on April 18, 2013, Plaintiff submitted a Request for Health Services, stating he had injured both hands while boxing, and his hands could be broken or dislocated. On that same day, Patricia Smith, LPN, examined Plaintiff's hands and determined that both hands had swollen areas. Plaintiff had pain in his left ring finger and was unable to move it or his right pinky finger (Dkt. 23-1 at 2-3).

The Progress Note by Joann Steward, LPN, stated she saw Plaintiff on April 21, 2013, and noted that his right 5th finger was jammed with slight swelling. The finger was repositioned and aligned. Plaintiff's left middle ring finger had a possible fracture. Good circulation and sensation was noted in both injured fingers. Limited movement with guarding also was observed. Plaintiff was instructed on the use of heat and ice, as well as rest and elevation of the affected areas for three days. He was prescribed acetaminophen and ibuprofen with an analgesic balm and was advised that an X-ray appointment would be made as soon as possible. A follow-up appointment was scheduled. (Dkt. 23-1 at 4-5).

Plaintiff filed an "emergency" grievance on April 23, 2013, No. 2013-1001-109-G, requesting "medical treatment (X rays)" as soon as practical (Dkt. 23-2 at 2-3). On that same day, the request was granted, and Plaintiff was seen in Medical where three X rays of each

4

hand were taken. Both hands were normal with no fractures, dislocations, soft tissue processes, or effusion noted. (Dkt. 33-5 at 6).

On April 25, 2016, Plaintiff filed another "emergency" grievance, No. 2013-1001-116-G, requesting to see a doctor and to receive proper treatment ASAP. The request was granted. (Dkt. 5-6). On April 26, 2013, Jamie Baldwin, R.N.'s Progress Note stated Plaintiff was seen for complaints regarding his hands. He denied current pain, and a full range of motion to both hands was noted. Plaintiff stated, "It's not about the pain, I want to know where my knuckle is." He pointed to the second digit knuckle and stated he wanted to see the doctor. Plaintiff abruptly interrupted Baldwin's attempts to discuss a plan of care and X rays. Plaintiff was notified of a pending appointment with Medical. (Dkt. 23-1 at 6-7).

On May 3, 2013, Plaintiff submitted a third "emergency" grievance, No. 2013-1001-132-G, requesting to be taken to the local hospital or a hand specialist to have his left ring finger, his right pinky finger, and his wrist examined by a physician. Nurse Larimer responded on May 6, 2013, granting Plaintiff's request to be seen by a physician. Plaintiff already was scheduled to see the facility physician on May 9, 2013. Plaintiff's request to be taken to the hospital or to a hand specialist was denied (Dkt. 8-9). He alleges he never saw a doctor at DCF for his injuries (Dkt. 34 at 5).

On May 9, 2013, Jamie Baldwin, R.N., noted in a Progress Note that Dr. Sanders had requested Plaintiff's hard X-ray films, and Dr. Sanders was to discuss Plaintiff's chart and the status of his right elbow and hand complaints. On May 14, 2013, Ray Larimer, R.N., stated in a Medical Transfer Summary that no current acute problem was noted, and Plaintiff was suitable for transport without restrictions. Plaintiff was transferred to Cimarron Correctional Facility (CCF). (Dkt. 23-1 at 8-10).

On May 21, 2013, Mark Weissman, M.D., examined Plaintiff's hands during a clinic

5

visit and found no evidence to support Plaintiff's claim of a fracture. Therefore, no outside referral for a hand specialist was initiated. (Dkts. 23-1 at 9-10 at 11; 23-2 at 11).

Plaintiff alleges in his response to Defendants' motion (Dkt. 34) that after his transfer to CCF, his hands were X-rayed on June 6, 2013. According to Plaintiff, the X rays showed that the two fingers he injured at DCF were broken. Plaintiff asserts he was taken to a physician at the University of Oklahoma hospital.

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court addressed the Eighth Amendment prohibition against cruel and unusual punishment in the context of medical attention:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under §1983.

*Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (citations and footnotes omitted).

Deliberate indifference involves both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prisoner first must produce objective evidence that the deprivation at issue was in fact "sufficiently serious." *Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (internal quotation marks omitted). The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must

6

also draw the inference." *Id*.

"[A] misdiagnosis, even if rising to the level of medical malpractice, is simply insufficient under our case law to satisfy the subjective component of a deliberate indifference claim." *Self v. Crum*, 439 F.3d 1227, 1234 (10th Cir.), *cert. denied*, 549 U.S. 856 (2006). "[Negligence] in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

With this standard in mind, the Court is of the view that the acts complained of do not show deliberate indifference to Plaintiff's medical needs as alleged. It is clear from the record that medical care was provided. Where there is such evidence of a "series of sick calls, examinations, diagnoses, and medication . . . it cannot be said there was a 'deliberate indifference' to the prisoner's complaints." *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976). To the extent Plaintiff is complaining about the inadequacy of medical care provided, the Court finds he is merely asserting a difference of opinion as to the kind and quality of medical treatment necessary under the circumstances. It is well settled that this type of disagreement fails to give rise to a cause of action under § 1983. *See McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977), *cert. denied*, 435 U.S. 917 (1978), and cases cited therein.

After careful review, and for the reasons set forth above, the Court finds there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Therefore, summary judgement is GRANTED in favor of the defendants on Plaintiff's Counts 1-4 and 6.

**State Negligence Claim (Count 5)**

Plaintiff alleges in Count 5 that Defendants Wilkinson and Larimer are liable under

Oklahoma law for their failure to provide examination, treatment, and physical therapy for his injuries. The preceding analysis disposes of all of Plaintiff's claims arising under federal law, and, consequently, the basis for federal subject matter jurisdiction. "Under these circumstances, the district court may decline to exercise continuing 'pendent' or supplemental jurisdiction over plaintiff's state claims." *Lancaster Independent Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998) (citing 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966)). The Court, therefore, declines jurisdiction over Plaintiff's state law claim for negligence, and Ground 5 is DISMISSED WITHOUT PREJUDICE.

**Motion for Amendment of Findings and/or Alteration of Judgment**

Finally, Plaintiff has filed a "motion for amendment of findings and/or alter the judgment," pursuant to Fed. R. Civ. P. 52, 59, and 60 (Dkt. 36), requesting the Court to "reconsider, alter, and grant relief from the minute order filed on 8-29-16" (Dkt. 35). The minute order in question granted Plaintiffs's motion to re-urge (Dkt. 28) his notice of contempt of court (Dkt. 16). The minute order, however, denied Plaintiff's request for sanctions against Defendants regarding their delay in filing an answer until Plaintiff's *in forma pauperis* status was determined.

Plaintiff admits he requested sanctions in his original notice of contempt (Dkt. 16). He complains, however, that the Court considered sanctions in its August 29, 2016, Minute Order (Dkt. 35), when he did not repeat his request for sanctions when he asked to re-urge the notice of contempt (Dkt. 28). To the extent Plaintiff has re-urged his notice of contempt, the Court finds Defendants reasonably believed this case could not proceed until the Court determined whether Plaintiff had accrued three "strikes" under 28 U.S.C. § 1915(g). The Court further finds Plaintiff has shown no prejudice from the Defendants' delay in filing an

answer until the issue of Plaintiff's *in forma pauperis* status was settled. There was no contempt of court. Plaintiff's "motion for amendment of findings and/or alter the judgment" (Dkt. 36) is DENIED.

**ACCORDINGLY,** Defendants' motion for summary judgment (Dkt. 33) is GRANTED with respect to Grounds 1, 2, 3, 4, and 6; Ground 5 is DISMISSED WITHOUT PREJUDICE; and Plaintiff's motion for amendment of findings and/or alter the judgment (Dkt. 36) is DENIED. This action is DISMISSED in its entirety.

**IT IS SO ORDERED** this 23rd day of March 2017.

_____
**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**